# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEREKET DEMSSE,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br><br>CITY OF SAN DIEGO; SAN DIEGO POLICE DEPARTMENT; OFFICER FORPIER; OFFICER BARNES; OFFICER TERRANOVA,<br><br>　　　　　　　Defendants. | CASE NO. 12cv0914 JM(WVG)<br><br>ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF CITY OF SAN DIEGO ON ALL CLAIMS; GRANTING DEFENDANT TERRANOVA'S MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS; GRANTING IN PART AND DENYING IN PART DEFENDANTS FORTIER AND BARNUM'S MOTION FOR SUMMARY JUDGMENT |

Defendants City of San Diego ("City"), erroneously sued as San Diego Police Department, Kenneth Fortier, erroneously sued as Officer Forpier, and Tobia Terranova (collectively "City Defendants") move for summary judgment on Plaintiff Bereket Demsse's civil rights complaint. Defendant Brian Barnum ("Barnum") separately moves for summary judgment or, alternatively, for judgment on the pleadings. Plaintiff opposes both motions. For the reasons set forth below, the court grants summary judgment in favor of City and Terranova on all state and federal claims, and grants in part and denies in part the motion for summary judgment brought by Defendants Fortier and Barnum.

# BACKGROUND

<u>The First Amended Complaint</u>

On November 28, 2012, Plaintiff filed the operative First Amended Complaint ("FAC") alleging five causes of action for assault, battery, intentional infliction of emotional distress, violation of 42 U.S.C. §1983, and violation of Cal. Civil Code Section 52.1. (Ct. Dkt. 20). Plaintiff's claims arise from events occurring on the evening of July 22, 2011. Plaintiff "was socializing with several of his friends at Colina Park" in San Diego, California when six or seven police cars arrived. (FAC ¶¶10-12). The police officers approached the group, allegedly asked the group who was on probation or parole, and then told the group "to line up." (FAC ¶14).

When Defendants approached the group, Plaintiff, a paraplegic confined to a wheelchair, was seated on the grass where his friends had placed him. Plaintiff, who was not on parole or probation, allegedly "explained to the Defendants he could not line up because he was a paraplegic and the wheelchair belonged to him." (FAC ¶15). The Defendants then "picked the Plaintiff up off the ground into the air [and] proceeded to drop him on the pavement." (FAC ¶16). Plaintiff allegedly suffered injuries requiring medical treatment.

<u>The Evidentiary Record</u>

On July 22, 2011 at around 7:30 p.m., Detective Hobbs of the San Diego gang unit observed about 15 males in Colina Park. Colina Park is a known hangout for gangs, in particular East African gangs. (Hobbs Depo. 5:5-15; 8:19-9-8; 21:7-16). Detective Hobbs reported by radio that he needed assistance from the gang suppression unit in contacting the group of men. (Id. 15:7-21). While he believed that certain individuals were drinking cans of beer, he did not inform dispatch of this fact. (Id. at 28:1-4). However, he informed the officers on site that the individuals appeared to be drinking alcohol. (Terranova Depo. 10:9-14; Fortier Depo. 7:25-8:20).

Detective Hallahan monitors the East African gangs in San Diego. (Terranova Depo. 6:23-8-23). About one to 14 days before July 11, 2011, Detective Hallahan

provided a briefing to the gang suppression team of the San Diego Police Department wherein he stated that he had information that an East African male, in a wheelchair, was carrying a concealed gun in the wheelchair, possibly in the seat pad. (Hallahan Depo. 21:6-22:7; Terranova Depo. 7:14-9:12; Fortier Depo 12:1-25; 13:7-14:1).

The officers approached the group with the intention of talking to them. Officer Fortier, the supervisor of the gang unit, testified that the officers intended the contact with the group to be voluntary and did not intend to detain anyone. (Fortier Depo. 25:4-20). The individual seated in the wheelchair was Anyle Farah. Probation officer Barnum knew that Farah was on probation. (Barnum Depo. 55:21-25). Mr. Farah was asked to stand and then officers conducted a pat down search. Officer Terranova testified that, as a probationer, Mr. Farah had signed a Fourth Amendment waiver. (Terranova Depo. 25:3-4). A backpack hanging on the back of the wheelchair was also searched by Officer Terranova. As he was searching the backpack, Officer Terranova testified that Plaintiff began yelling and stated that the backpack was his and that he didn't want it searched. (Terranova Depo. 34:4- 35:22). No weapons were found.

As Officer Terranova continued to search the backpack and wheelchair, Plaintiff "was upset and angry and yelling at us the whole time." (Terranova Depo. 36:14-17). He then noticed that Plaintiff was sitting on something. He thought it was a black bag with a zipper going across it. Once Officer Terranova pointed out what he believed to be a black bag, Officers Fortier and Barnum walked over to Plaintiff and lifted him off the bag. The officers lifted Plaintiff up about six inches from the ground. Plaintiff was lifted by his armpits, the bag removed, and Plaintiff placed on the ground. (Terranova 37:4-38:7). Once the object was removed from underneath Plaintiff, the officers noted that it was a pillow or cushion to a chair. Sergeant Fortier then used his baton to probe the cushion for any hard objects that night be secluded there. No objects were found. Id. Officer Terranova testified that Plaintiff was not suspected of committing a crime and he was not detained. At about this time, the officer realized that the wheelchair belonged to Plaintiff.

One of the individuals at the park, Guled Ali, testified that the officers lifted Plaintiff about 4-5 feet above the ground and then dropped him where he landed partially on the pavement. (Ali Decl. ¶12). Mr. Ali heard one of the officers say, "I've seen him walk before." Id. Plaintiff was in obvious pain and asked for an ambulance. One of the officers said "your not hurt" (sic) and another said "smoke some weed, you'll be fine." Id. ¶13. Plaintiff testified that he did not know how high he was lifted by the officers but it was about five feet. (Demsse Depo. 82:4-83:1). He was held in the air about three to five seconds before he was dropped on the ground. Plaintiff testified that the officers moved him about three feet before dropping him on the concrete pavement where he was injured. (Demsse Depo. 86:6-19).

When Plaintiff said he was in pain, Officer Fortier offered to call medical assistance. Plaintiff initially declined the offer of assistance but later requested medical assistance. No one was arrested or cited for criminal conduct.

## DISCUSSION

**Legal Standards**

<u>Summary Judgment</u>

A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); <u>Prison Legal News v. Lehman</u>, 397 F.3d 692, 698 (9th Cir. 2005). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the file which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials <u>negating</u> the opponent's claim." <u>Id.</u> (emphasis in original). The opposing party cannot rest on the mere allegations or denials of a pleading, but must "go beyond the pleadings and by [the party's] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for

trial.'" Id. at 324 (citation omitted). The opposing party also may not rely solely on conclusory allegations unsupported by factual data. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

The court must examine the evidence in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Any doubt as to the existence of any issue of material fact requires denial of the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). On a motion for summary judgment, when "'the moving party bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial.'" Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992) (emphasis in original) (quoting International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991), cert. denied, 502 U.S. 1059 (1992)).

42 U.S.C. §1983

The Civil Rights Act, 42 U.S.C. § 1983, provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Thus, section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327, 328 (1986); see Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc).

**The Constitutional Violations**

Plaintiff, who has the burden to show a genuine issue of material fact or law, argues that search of the wheelchair, backpack and cushion were unlawful and that the

officers used unreasonable force.[1]

### The Search Claims

The Fourth Amendment is not a guarantee against all searches and seizures, but only against unreasonable searches and seizures. In evaluating the reasonableness of an investigative stop, the issue is

> whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.

Terry v. Ohio, 392 U.S. 1, 20 (1968). In Terry, the Supreme Court recognized that when a police officer accosts an individual and restrains his freedom to walk away, the individually has been "seized." Notwithstanding the seizure, the fundamental right or duty of an officer to investigate potential crime outweighs a minimal intrusion on the suspected individual.

A valid investigatory stop must be temporary, based upon reasonable suspicion, and last no longer than necessary to effectuate the purpose of the stop. Florida v. Royer, 460 U.S. 491, 500 (1983). In determining whether an investigative detention ripens into an arrest, the court must evaluate the totality of the circumstances. Eberle v. City of Anaheim, 901 F.2d 814, 819 (9th Cir. 1990). In evaluating whether an investigative detention is unreasonable, "common sense and ordinary human experience must govern over rigid criteria." United States v. Sharpe, 470 U.S. 675, 685 (1984).

The court concludes that no constitutional violation occurred when the police searched the wheelchair, backpack, and pad. Once the gang suppression unit arrived on the scene, Detective Hobbs informed the unit that he observed several of the group drinking what he believed to be beer. The gang suppression unit approached the location where the individuals were congregating and observed East African gang members. They also possessed information that an East African male, in a wheelchair,

---

[1] Plaintiff concedes that Defendants could lawfully search those areas within the control of Mr. Farah - the wheelchair and the backpack. (Oppo. at p.6:2-4).

may be carrying a concealed gun in the wheelchair, possibly in the seat pad. (Hallahan Depo. 21:6-22:7; Terranova Depo. 7:14-9:12; Fortier Depo 12:1-25; 13:7-14:1). Probation Officer and Defendant Barnum also recognized the individual in possession and control of the wheelchair, Anyle Farah, and knew that he was a probationer with a Fourth Amendment waiver. The evidentiary record reveals that the search of the wheelchair, backpack, and seat cushion was temporary, lasting no more than a few minutes. In light of the information about an East African male in a wheelchair in possession of a concealed weapon, the officers possessed reasonable suspicion that a firearm was present thus giving rise to legitimate concerns for officer safety.

The totality of the circumstances show that no Fourth Amendment violation occurred: the officers entered a public park, Colina Park, known for gang activities; observed East African gang members; Officer Hobbs informed the other officers that the individuals appeared to be consuming beer; identified Mr. Farah as a probationer with a Fourth Amendment waiver; proceeded with the patdown of Mr. Farah; and then searched the area within the probationer's control, the wheelchair and backpack, for weapons. During this search, Plaintiff was yelling at the officers that the wheelchair and backpack were his. Once Officer and Defendant Terranova noticed that Plaintiff was seated on a black object, possibly a bag containing a concealed weapon, Officers Fortier and Barnum walked over to where Plaintiff was seated, lifted him off the ground, and removed the object to search for weapons. At that time the object - a cushion to the wheelchair - was searched. "When a search or seizure has as its immediate object a search for a weapon, [] we have struck the balance to allow the weighty interest in the safety of police officers to justify warrantless searches based only on a reasonable suspicion of criminal activity." New York v. Class, 475 U.S. 106, 117 (1986).

In sum, the court concludes that the brief detention of Plaintiff was based upon reasonable suspicion and lasted no longer than necessary. The court grants summary judgment in favor of all Defendants and against Plaintiff on the unlawful search claims.

- 7 -

12cv0914

<u>The Excessive Force Claim</u>

Plaintiff argues that Defendants used excessive force in violation of his constitutional rights when the officers dropped him on the concrete. Claims arising before or during a warrantless arrest are analyzed under a Fourth Amendment "objective reasonableness" analysis. <u>Graham v. Conner</u>, 490 U.S. 386, 388 (1989); <u>see also</u> <u>Tennessee v. Garner</u>, 471 U.S. 1 (1985) (holding that the Fourth Amendment requires that the level of force used to seize a person must be reasonable). As noted in <u>Graham</u>,

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," . . . violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

490 U.S. at 396-97.

Here, the court concludes that whether Defendants Barnum and Fortier applied reasonable force presents a material question of fact. At issue is whether these Defendants used reasonable force when they lowered Plaintiff to the ground. The Defendants testified that Plaintiff was lifted about six inches off the ground. (Terranova 37:4-38:7). Plaintiff and Mr. Ali testified that Plaintiff was lifted off the ground about five feet, moved about three feet from where Plaintiff was seated, and then dropped on the concrete. (Ali Decl. ¶12; Demsse Depo. P:82:4-83:1)). Mr. Ali heard one of the officers say, "I've seen him walk before." <u>Id.</u> Plaintiff was in obvious pain and asked for an ambulance. One of the officers said "your not hurt" (sic) and another said "smoke some weed, you'll be fine." <u>Id.</u> ¶13. Seen in this light, whether the act of dropping Plaintiff to the ground from five feet or six inches is an issue of fact not appropriate for resolution on a motion for summary judgment.[2]

---

[2] The court notes that the cited record is also silent on whether Plaintiff was dropped on his head or some other part of his body.

In sum, the court concludes that Defendants are entitled to summary judgment on the unlawful search claims but not on the unlawful seizure/excessive force claim.

**Qualified Immunity**

The Individual Defendants move for summary judgment on grounds of qualified immunity. While qualified immunity is usually to be determined "at the earliest possible point in the litigation," Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993); Liston v. County of Riverside, 120 F.3d 965, 975 (9th Cir. 1997); Saucier, 533 U.S. 194, 200 (2001), a court order granting summary judgment in favor of moving defendants is inappropriate where a genuine issue of material fact prevents a determination of qualified immunity until after trial on the merits. See Act Up!/Portland, 988 F.3d at 873; Sloman v. Tadlock, 21 F.3d 1462, 1467-68 (9th Cir. 1994); Thorsted v. Kelly, 858 F.d. 571, 575 (9th Cir. 1988) (citing cases finding that qualified immunity from damages may be asserted at trial); see also County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all.").

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity "'provides ample support to all but the plainly incompetent or those who knowingly violate the law.'" Burns v. Reed, 500 U.S. 478, 494-95 (1991), quoting Malley v. Briggs, 475 U.S. 335, 341 (1986). "Therefore, *regardless of whether a constitutional violation occurred,* the officer should prevail if the right asserted by the plaintiff was not 'clearly established' or the officer could have reasonably believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.d. 624, 627 (9th Cir. 1991) (emphasis added). Furthermore, "[t]he entitlement is an immunity from suit rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously

permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

Claims of qualified immunity require a two-step analysis. As a threshold matter, the court must consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If the allegations do not establish the violation of a constitutional right, "there is no necessity for further inquiries concerning qualified immunity." Id. If the allegations could make out a constitutional violation, however, the court must then ask whether the right was clearly established--that is, whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 2153 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)). If an officer makes a reasonable mistake as to what the law requires, the officer is entitled to immunity. Id. at 2157.

Here, the court concludes that, with respect to the unlawful search claims, the Defendants are entitled to qualified immunity because, for the above-stated reasons, the conduct did not violate any clearly established right as articulated in Terry v. Ohio. However, with respect to the seizure/excessive force claim, it is clearly established that officers are entitled to only use reasonable force to detain an individual. Graham, 490 U.S. at 388. However, for the above-stated reasons, whether the force applied was reasonable presents a question of fact. Seen in the best light to Plaintiff, lifting a paraplegic five feet off the ground and then dropping him on concrete may cause serious injury and be unreasonable under the circumstances.

In sum, Defendants are entitled to qualified immunity on the search related claims but not on the unlawful seizure claim.

**The Constitutional Claims Against the City**

The court grants summary judgment in favor of the City on Plaintiff's Monell claim because Plaintiff fails to submit any evidence in support of this claim. Plaintiff acknowledges that there is no evidence in support of the Monell claim. (Oppo. at p.20:27-28).

**The State Law Claims Against Defendant Barnum**

Plaintiff concedes that he cannot maintain his state law claims against Defendant Barnum because he did not timely file an administrative claim. (Barnum Oppo. at p.9:16-21). Similarly, Plaintiff does not argue nor demonstrate any basis for tolling the administrative claims filing deadline. Accordingly, the court grants summary judgment in favor of Defendant Barnum on all state law claims.

**The State Law Claims Against Defendant Fortier**

Defendants move for summary judgment on the state law claims for assault, battery, intentional infliction of emotional distress, and Civil Code §52.1 on grounds that there was reasonable suspicion to detain Plaintiff, pat down Plaintiff's cushion pad and check the backpack for a weapon. Defendants also argue that the force applied was reasonable under the circumstances. As to all claims, Defendants also argue that qualified immunity bars all claims.

The court denies the motion for summary judgment on the grounds raised because, for the above-stated reasons, the court finds that there is a genuine issue of material fact with respect to whether the force applied was reasonable under the circumstances.

**The State and Federal Claims Against Defendant Terranova**

Defendant Terranova searched the wheelchair and the backpack. He did not lift Plaintiff from the ground. Plaintiff simply fails to identify any manner in which Defendant Terranova was involved in the seizure of Plaintiff. A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).[3] There is no

---

[3] In Johnson v. Duffy, 588 F.2d 740 (9th Cir.1978), the Ninth Circuit explained the nature of liability under § 1983, and held that "personal participation is not the only predicate for section 1983 liability. Anyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable." Id. at 743; see also Gilbrook v. City of Westminster, 177 F.3d 839, 854 (9th Cir. 1999). The Court further explained that the

respondeat superior liability under 42 U.S.C. § 1983. Palmer v. Sanderson, 9 F.3d 1433, 1437-38 (9th Cir. 1993). Accordingly, in the absence of any evidence showing that Terranova was involved in the unlawful seizure claim, the court grants Defendant Terranova's motion for summary judgment on all state and federal claims.

In sum, the court grants Defendant City's motion for summary judgment on all claims; grants Defendant Terranova's motion for summary judgment on all claims; grants Defendant Barnum's motion for summary judgment on all state law claims, denies the motion for summary judgment on the federal unlawful seizure/excessive force claim, and grants the motion for summary judgment on all federal unlawful search claims; and denies Defendant Fortier's motion for summary judgment on the state law claims, denies the motion for summary judgment on the federal unlawful seizure/excessive force claim, and grants the motion for summary judgment on all federal unlawful search claims.

**IT IS SO ORDERED.**

DATED: August 12, 2013

Hon. Jeffrey T. Miller
United States District Judge

cc: All parties

---

"requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Id. at 743-44; Gilbrook, 177 F.3d at 854. Here, however, Plaintiff fails to submit any evidence to show that Terranova caused Plaintiff to be subjected to an unlawful seizure.